UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA DELLIS and
JESSICA DELLIS,

        Plaintiffs,

  v.                                        Case No. 18-C-202

FAY SERVICING, LLC,

        Defendant.

**ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL DISMISSAL**

        Plaintiffs Joshua and Jessica Dellis sued Defendant Fay Servicing, LLC for violation of the Real Estate Settlement Procedures Act (RESPA), intentional interference with contract, and violation of Wis. Stat. § 224.77. This court has jurisdiction over the RESPA claim under 28 U.S.C. § 1331, and supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367. The case is before the court on Fay's Motion to Dismiss Plaintiffs' intentional interference with contract claim and a portion of Plaintiffs' claim under Wis. Stat. § 224.77 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 15. For the reasons stated below, Fay's motion will be granted.

### I. RULE 12(b)(6) MOTION TO DISMISS AND RULE 8 PLEADING STANDARD

        A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a pleading. *Szabo v. Bridgeport Machine, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain

sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Twombly*, the Court rejected the liberal pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957), under which a complaint could not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561–62 (quoting *Conley*, 355 U.S. at 45–46). Instead of a defendant being required to prove at the pleading stage that the plaintiff can prove no set of facts to support his claim, *Twombly* held that to survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In so ruling, the Court expressed concern over the cost of litigation, particularly in complex anti-trust litigation of the kind presented in *Twombly* itself. The Court also noted the general view that judicial supervision of the discovery process and the availability of summary judgment could not effectively curb discovery abuse and expense: "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management, . . . given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side." *Id.* at 559; *see also* Frank H. Easterbrook, *Discovery as Abuse*, 69 B.U. L. REV. 635, 638 (1989) ("Judges can do little about impositional discovery when parties control the legal claims to be presented and conduct the discovery themselves."). The Court also noted "it is self-evident that the problem of discovery abuse cannot be solved by careful scrutiny of evidence at the summary judgment stage, much less lucid instructions to juries." *Twombly*, 550 U.S. at 559. The Court thus concluded that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the

2

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted).

In *Iqbal*, a civil rights action, the Court made clear that the pleading standard it had announced in *Twombly* was not confined to complaints asserting anti-trust claims, but was grounded in the language of Rule 8(a) of the Federal Rules of Civil Procedure: "Our decision in *Twombly* expounded the pleading standard for 'all civil actions,' . . . and it applies to antitrust and discrimination suits alike." 556 U.S. at 684.

*Iqbal* also highlighted "two working principles" underlying *Twombly*. *Id.* First, the Court noted that the rule requiring the court to accept as true all of the allegations of the complaint did not apply to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Though it acknowledged that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era," the Court emphasized that "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. The second *Twombly* principle the Court highlighted in *Iqbal* is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Court emphasized that determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* While "not akin to a probability requirement," the standard requires "more than a sheer possibility that the defendant acted unlawfully." *Id.* at 678.

These are the principles that must govern the determination of Fay's motion for partial dismissal.

## II. BACKGROUND

The following facts are taken from the First Amended Complaint (FAC) and are presumed true for purposes of deciding the motion before the court. Plaintiffs entered into a note and mortgage secured by a lien on their home on May 31, 2007. The note and mortgage was subsequently transferred to Juniper Ventures, LLC (Juniper). Plaintiffs were notified that service of their loan would be transferred to Fay on May 24, 2013. Plaintiffs were in the process of applying for a loan modification with their previous loan servicer when the transfer occurred. Plaintiffs applied for a loan modification with Fay around July of 2013.

During July and August, Plaintiffs submitted, and re-submitted when Fay denied it had received them, documents requested by Fay. Plaintiffs also followed up with phone calls, and submitted a requested payment in July. When Plaintiffs attempted to make another payment in August, Fay informed Plaintiffs that it would not accept payments while their application was being processed.

On September 5, 2013, Juniper declared the loan in default, sent Plaintiffs a notice of acceleration, and demanded a payment of $5,886.24 be made to Fay. It does not appear that Plaintiffs made the requested payment.

Sometime in February of 2014, Fay informed Plaintiffs that they were eligible for a six-month forbearance plan that would begin in April. Plaintiffs accepted the plan. After Plaintiffs began making forbearance payments in April, Plaintiffs allege their point of contact person with Fay stated Plaintiffs would be offered a permanent modification before the end of the six-month forbearance

4

period if they submitted the required paperwork by the end of July. Plaintiffs claim to have submitted all requested paperwork.

In November of 2014, Fay offered to extend Plaintiffs' forbearance three additional months because it had not finished reviewing Plaintiffs' modification application. Plaintiffs claim they declined to extend forbearance because of Fay's previous promise that they would be offered a permanent modification at the end of the six-month forbearance period.

On January 15, 2015, Juniper initiated a foreclosure action against Plaintiffs in Kewaunee County, WI. Also in January of 2015, a new application for loss mitigation was sent to Plaintiffs, with a deadline to submit the required paperwork by March 22, 2015. Plaintiffs again submitted documents, re-submitted documents, and followed up with phone calls.

Fay notified Plaintiffs that their new application was denied on April 7, 2015, because they had failed to submit a completed application prior to the deadline. Plaintiffs allege that they did timely submit all requested paperwork and that their application was erroneously denied. On April 27, 2015, Fay requested additional records which Plaintiffs promptly provided. Fay informed Plaintiffs in May of 2015 that no additional paperwork needed to be submitted for their loan modification.

Plaintiffs received a modification offer from Fay in May of 2015, which they did not accept. Plaintiffs claim the terms were worse than their original loan and that certain modification programs they were interested in were not available to them due to Fay's previous improper denial of Plaintiffs' application in April.

On November 12, 2015, Juniper's motion for summary judgment in the previously mentioned foreclosure action was denied. ECF No. 16-3. The parties filed a stipulation to dismiss the

foreclosure action on September 6, 2016. ECF No. 9-4. Plaintiffs also allege that during 2015, Fay sent Plaintiffs billing statements demanding varying minimum payment amounts that also listed varying interest rates.

Fay sent another loan modification application to Plaintiffs in February of 2016 and Plaintiffs supplied the requested documents. On April 27, 2016, Plaintiffs accepted a loan modification offered on a trial basis by Fay. Plaintiffs commenced the lawsuit at hand on February 7, 2018. ECF No. 1.

### III. ANALYSIS

**A. Intentional Interference With Contract**

Under Wisconsin law, a claim for tortious interference with contract requires proof of five elements: "(1) the plaintiff had a contract or a prospective contractual relationship with a third party, (2) the defendant interfered with that relationship, (3) the interference by the defendant was intentional, (4) there was a causal connection between the interference and damages, and (5) the defendant was not justified or privileged to interfere." *Wesbrook v. Ulrich*, 840 F.3d 388, 395 (7th Cir. 2016) (citing *Briesemeister v. Lehner*, 295 Wis. 2d 429, 720 N.W.2d 531, 542 (Ct. App. 2006)). Plaintiffs allege that Fay interfered with their contract, i.e., the original note and mortgage that was assigned to Juniper, by refusing to accept payments on the note after August 2013. On September 5, 2013, according to the amended complaint, Juniper sent Plaintiffs a notice of acceleration, declared the loan in default, and demanded payment of $5,886.24 on or before October 5, 2013. In January 2015, Juniper filed its foreclosure action in Kewaunee County Circuit Court.

Fay argues that Plaintiffs' claim for intentional interference with contract is barred by Wisconsin's three-year statute of limitations. *See* Wis. Stat. § 893.57 (2010) ("An action to recover damages for . . . [an] other intentional tort to the person shall be commenced within 3 years after the

6

cause of action accrues or be barred."); *see also Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746 F. Supp. 2d 1000, 1013–18 (E.D. Wis. 2010) (holding that claim for tortious interference with contractual relations is governed by Wis. Stat. § 893.57). Under Wisconsin law, a cause of action accrues when "there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Benson v. City of Madison*, 2017 WI 65, ¶ 54, 376 Wis. 2d 35, 897 N.W.2d 16.

Plaintiffs commenced this action on February 7, 2018. The three-year statute of limitations would therefore bar their claim if it accrued before February 7, 2015. Fay notes that its alleged interference occurred back in August 2013 and Plaintiffs' contract with Juniper was clearly breached by January of 2015, when Juniper commenced its foreclosure action against them. Thus, Fay argues, Plaintiffs' claim for intentional interference with contract is barred. The fact that the results of Fay's interference extended beyond February 7, 2015, makes no difference. "A later injury from the same tortious conduct does not restart the running of the statute of limitations." *Estate of Genrich v. OHIC Ins. Co.*, 2009 WI 67, ¶ 21, 318 Wis. 2d 553, 769 N.W.2d 481 (quoting *Fojut v. Stafl*, 212 Wis. 2d 827, 832, 569 N.W.2d 737 (Ct. App. 1997)).

In response, Plaintiffs argue that Fay's interference was a "continuing course of conduct." Pls.' Resp. at 2, ECF No. 24. The "continuing violation" or "continuing course of conduct" doctrine is a defense to the statute of limitations that operates by delaying its accrual or start date. *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010). Citing *Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 469 N.W.2d 595 (1991), Plaintiffs argue that under Wisconsin law, a cause of action does not accrue until the injury is complete. But *Kolpin* involved the "continuing negligence" doctrine, which the court defined as "the principle whereby a claimant brings one cause of action for

7

a defendant's continuum of negligent acts." *Kolpin*, 162 Wis. 2d at 21. *Kolpin* was about a stray voltage case in which the plaintiff dairy farmers sued the defendant electric company on theories of negligence, strict liability and nuisance for loss of milk production allegedly caused by the power company's electrical distribution system. *Id.* at 10. The power company claimed the plaintiffs' claim was barred by the six-year statute of limitations for property damage because its distribution system had been in operation for more than six years. *Id.* at 16. The court explained the "continuum of negligent acts" doctrine as follows: "if a defendant engages in a continuum of separate negligent acts which cause the plaintiff damage, the cause of action is not complete until the last act of negligence occurs. Once the cause of action is complete, then the cause of action accrues." *Id.* at 24. The *Kolpin* court found that the continuum of negligence doctrine did not apply in that case, however, because the plaintiffs alleged only a single negligent act—the use of a distribution system which allowed stray voltage. *Id.* at 25. Although the injury continued over time, the court noted no series of negligent acts were alleged. *Id*.

*Kolpin* would seem to have little application to this case where what is alleged is not negligence but intentional interference with contract. Here, it is undisputed that Fay refused to accept Plaintiffs' payments and Juniper deemed Plaintiffs to be in default in 2013, more than four years before Plaintiffs filed suit. Fay's refusal to accept payments while Plaintiffs' loan modification request was under consideration was a discreet act that resulted in the breach of the contract that forms the basis of Plaintiffs' claim. *See Mikulski v. Wells Fargo Bank, N.A.*, No. 17-CV-179, 2017 WL 3701213 (E.D. Wis. Aug. 25, 2017). Since the conduct that allegedly caused the breach, as well as the breach itself, occurred before February 7, 2015, Plaintiffs' claim for tortious interference with contract is barred. *See Kovacs*, 614 F.3d at 676 ("The continuing violation doctrine, however, does

8

not apply to 'a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing.'" (quoting *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005))).

Plaintiffs allege that after their default on the note Fay intentionally interfered with their contract because Fay continued to refuse to review Plaintiffs' loan modification applications well into 2016. But this complaint is about Fay's failure to approve a new contract with Juniper, not interference with the old.

At a more fundamental level, Plaintiffs' claim for intentional interference with contract fails because the claim that Fay, Juniper's agent, intended to interfere with Plaintiffs' contract with Juniper lacks plausibility on its face. To be sure, if the allegations of the amended complaint are true, Fay, through a series of different employees, seriously mishandled Plaintiffs' application for a loan modification. But that Fay did so in an effort and with the intent to interfere with Plaintiffs' contract, instead of the far more likely explanation of individual and organizational ineptitude, finds no support in any of the allegations. Absent some allegation suggesting why Fay would have wanted to interfere with Plaintiffs' contract with Juniper, the claim has no more plausibility than the anti-trust claim at issue in *Twombly*.

In sum, Plaintiffs' intentional interference with contract claim is barred by the three-year statute of limitations contained in Wis. Stat. § 893.57. To the extent Plaintiffs seek to assert a claim that accrued after February 7, 2015, the allegations of the amended complaint fail to state a plausible claim. Plaintiffs' second cause of action will therefore be dismissed.

## B. Wis. Stat. § 224.77(1)(c)

Wisconsin Statute § 224.77(1)(c) prohibits mortgage providers from making "a false, deceptive, or misleading promise relating to the services being offered or that influences, persuades,

or induces a client to act to his or her detriment." Plaintiffs allege that "Fay's statements with respect to forbearance were false, deceptive and misleading promises that influenced [Plaintiffs] to their detriment, namely, the [Plaintiffs] accepted the forbearance and made payments based on the promises that the new modification would be offered in six months . . . ." FAC, ¶ 89(a). Though it is not clear from the FAC which statements it is referring to, Plaintiffs state in their response brief that the actionable statement is Fay's promise that a new modification of their contract would be offered before the six-month forbearance agreement expired.

Plaintiffs' own complaint, however, alleges facts inconsistent with this claim. Neal Hogberg, the Fay employee who allegedly made this promise, was not appointed as the single point of contact for Plaintiffs' account until May 2014, one month *after* they signed the forbearance agreement. *Id.*, ¶¶ 35–37. The agreement also states that "in executing this Agreement the Debtor is not relying on any other representation, either written or oral, express or implied, made to Debtor by any other person or entity." ECF No. 16-5, ¶ 7.

Alternatively, Plaintiffs claim the reason they made forbearance payments was Fay's promise during the six-month forbearance period that a permanent modification would be offered at the end. As Fay correctly points out, however, "the forbearance agreement was a binding contract, and the Plaintiffs were obligated to make the payments once they signed it." Def.'s Reply Br. at 7, ECF No. 26. Consequently, making forbearance payments was to Plaintiffs' benefit, not detriment.

Lastly, Plaintiffs argue they relied on Fay's promise to offer a permanent modification by the end of the six-month forbearance period when in November they declined to extend the forbearance three more months after the original forbearance period ended in October. The alleged detriment Plaintiffs claim to have suffered was having to submit another loan modification application and defend the foreclosure action that was filed against them.

It is unclear how having to submit another loan modification application is to Plaintiffs' detriment, as that is what Plaintiffs have sought throughout the course of the alleged events. And while entering into another forbearance agreement may have delayed the start of the foreclosure action, Plaintiffs' refusal to extend forbearance did not cause the foreclosure action to be filed. Rather, the foreclosure action is a result of Plaintiffs' failure to make payments, albeit allegedly the result of Fay's refusal to accept payments. In addition, Plaintiffs rejected Fay's initial permanent loan modification when it was eventually offered.

Based on the foregoing, I conclude that Plaintiffs have failed to allege facts sufficient to state a plausible claim that Fay violated Wis. Stat. § 224.77(1)(c). That portion of Plaintiffs' § 224.77 claim will, therefore, be dismissed. The claim that Fay violated other subsections of § 224.77 remains.

## IV. CONCLUSION

For these reasons, Fay's Partial Motion to Dismiss (ECF No. 15) is **GRANTED.** Plaintiffs' intentional interference with contract claim in Count Two and the alleged violation of § 224.77(1)(c) in Count Three are dismissed.

**SO ORDERED** this   10th   day of October, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
